# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2698-CR |
| COMPLETE TITLE: | State of Wisconsin,<br>　　　Plaintiff-Respondent,<br>　v.<br>Curtis L. Jackson,<br>　　　Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 345 Wis. 2d 62, 823 N.W.2d 840
(Ct. App. - Unpublished)

| | |
|---|---|
| OPINION FILED: | January 22, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 18, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Daniel Konkol/Richard Sankovitz |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | BRADLEY, J., concurs. (Opinion filed.) |
| DISSENTED: | ABRAHAMSON, C.J., dissents. (Opinion filed.)<br>BRADLEY, J., joins Part I of dissent. |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *James Rebholz* and *Rebholz & Auberry*, Wauwatosa, and oral argument by *James Rebholz*.

For the plaintiff-respondent, the cause was argued by *Marguerite Moeller*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP2698-CR
(L.C. No. 2008CF5563)

STATE OF WISCONSIN      :     IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**Curtis L. Jackson,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**JAN 22, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished decision of the court of appeals, State v. Jackson, No. 2011AP2698-CR, unpublished slip op. (Wis. Ct. App. Oct. 10, 2012), that affirmed the judgment and order of the Milwaukee County Circuit Court,[1] which convicted Curtis L. Jackson ("Jackson") of second-degree reckless homicide by use of a dangerous weapon, and denied his motion for a new trial.

¶2 Jackson's petition for review presents the narrow question of whether a defendant in a homicide prosecution may

---

[1] The Honorable Daniel L. Konkol presided over the pretrial proceedings and the trial. The Honorable Richard J. Sankovitz presided over the postconviction motion for a new trial.

introduce evidence of the victim's reputation for violence, when the defendant did not know of the victim's reputation at the time of the offense.

¶3   The issues underlying this case are more complex than as set forth in the petition for review.   Specifically, this court must decide whether the circuit court improperly excluded trial evidence regarding both the shooting victim's reputation for violence and the victim's specific violent acts.

¶4   Jackson was charged with first-degree intentional homicide by use of a dangerous weapon, contrary to Wis. Stat. §§ 940.01(1)(a), 939.50(3)(a), and 939.63(1)(b) (2009-10),[2] a class A felony.   Jackson argued that the victim was behaving in a threatening manner, that he believed the victim was armed, and that he killed the victim in self-defense.   Jackson had neither met the victim, nor knew of the victim's character prior to the night of the shooting.

¶5   In support of his self-defense theory, Jackson moved the circuit court to admit character evidence.   While the motion cited to several statutory provisions, it focused on the admission of three specific acts to prove the victim's character for violence.   The motion did not set forth a foundational basis for the admission of reputation testimony.   The circuit court denied the motion.   Following his jury trial Jackson brought a postconviction motion for a new trial in which he argued, in

---

[2] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

part, that the trial court erred by not allowing Jackson to introduce character evidence to show that the victim was the "first aggressor" in the confrontation. The circuit court also denied Jackson's postconviction motion, and Jackson appealed.

¶6 The court of appeals affirmed the circuit court, relying on McMorris v. State, 58 Wis. 2d 144, 205 N.W.2d 559 (1973). In the court of appeals, Jackson conceded that the specific acts of violence were inadmissible to prove the character of the victim under Wis. Stat. § 904.05(2), but argued that the victim's violent character could still have been proved by reputation testimony under § 904.05(1).[3] Jackson did not appeal the circuit court's exclusion of other acts evidence under Wis. Stat. § 904.04(2).[4] The court of appeals affirmed the

---

[3] Wisconsin Stat. § 904.05 provides:

(1) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable in relevant specific instances.

(2) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of the person's conduct.

[4] Wisconsin Stat. § 904.04(2) provides, in relevant part:

(a) Except as provided in par. (b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive,

3

circuit court, concluding that a "defendant's prior knowledge of the victim's character, either by reputation or specific acts, has consistently been a prerequisite to admission of such evidence as part of a self-defense claim." Jackson, No. 2011AP2698-CR, unpublished slip op., ¶21.

¶7 Jackson petitioned this court for review, which we granted on February 12, 2013.

¶8 We hold that the circuit court did not erroneously exercise its discretion in denying Jackson's motion to admit character evidence. The circuit court properly determined that in order for specific acts of violence to be admissible, "character or a trait of character of a person" must be "an essential element of a charge, claim, or defense." In a homicide case where a claim of self-defense is raised, character evidence may be admissible as evidence of the defendant's state of mind so long as the defendant had knowledge of the prior acts at the time of the offense. McMorris, 58 Wis. 2d at 152. We also conclude that the circuit court did not err in denying Jackson's motion to admit testimony that the victim had a reputation for violence under Wis. Stat. § 904.05(1). Jackson failed to establish a proper foundation for the court to determine that evidence of the victim's reputation for violence was admissible. We further conclude that, even assuming error

---

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

occurred, that error was harmless. Therefore, we affirm the decision of the court of appeals.

I. FACTUAL BACKGROUND

¶9 On November 4, 2008, Milwaukee Police Department Officer Frank Galloway ("Officer Galloway") responded to a shots fired call at 3776 North 60th Street in the City of Milwaukee. Upon arrival, Officer Galloway was directed by witnesses to the rear of the residence where he found the victim, Angelo McCaleb ("McCaleb"), lying on his back.

¶10 McCaleb was declared dead at the scene. His body was later transported to the Milwaukee County Medical Examiner's Office where an autopsy confirmed that McCaleb had died as the result of a single gunshot wound to the chest.

¶11 While at the scene, Officer Galloway encountered Jackson. Officer Galloway asked Jackson if he knew who had shot the victim, to which Jackson responded: "I did it. I shot him. The gun is over there on top of the car. Sorry, I did not mean to do it." Officer Galloway took Jackson into custody.

¶12 Although the five witnesses to the shooting differed on the details, the basic facts are undisputed. On the evening of November 4, 2008, Tanya Davis ("Davis") borrowed Jackson's car to go to a bar. While at the bar, Davis met McCaleb and his friend Wayne Johnson ("Johnson") and had drinks with them. It would later be established that McCaleb had a .18 blood alcohol concentration at the time of his death. While Davis was at the bar, Jackson left phone messages asking her to return his car.

5

Davis testified that McCaleb responded to these messages by saying "fuck that nigger" in reference to Jackson.

¶13 Davis eventually returned the car to Jackson's house. She was followed by McCaleb and Johnson. Upon arriving, McCaleb and Johnson got into an argument with Jackson and two women, Francheska Garcia ("Garcia") and Lawanda Knight ("Knight"), who lived with Jackson at the time. Jackson would later testify that, when he knocked on McCaleb's car window, McCaleb said that Jackson "had some fuckin' nerve knockin' on somebody's car window like that." Jackson and McCaleb then argued, "yelling back and forth" about whether Davis would be going back out that evening. During the course of the argument, Jackson testified that McCaleb "lunged" at Garcia with his fist "clenched" and "[a]nger in his face." This was corroborated by testimony from Garcia, who stated that McCaleb stepped towards her "like to hit" her at one point during the argument. Jackson then retrieved a handgun from his vehicle.

¶14 Knight later testified that Jackson used that gun to shoot McCaleb only after McCaleb got "so mad" and returned to Johnson's car as if to retrieve something. McCaleb then walked back towards Jackson "really fast with one hand behind his back," saying "something for you, motherfucker." Further, Knight told police that McCaleb was "pulling at his waistband as if he was going for a gun." In an interview with a Milwaukee Police Department detective following the shooting, Jackson said that McCaleb was behaving in a threatening manner, and that he

believed McCaleb had armed himself as well. McCaleb was, in fact, unarmed.

## II. PROCEDURAL POSTURE

¶15 On November 8, 2008, Jackson made his initial appearance. The criminal complaint alleged a single count of first-degree reckless homicide while armed, contrary to Wis. Stat. §§ 940.02(1) and 939.63, a class B felony. Cash bail was set at $150,000.

¶16 On November 17, 2008, the court held Jackson's preliminary hearing. Following testimony from a Milwaukee Police Department detective regarding the circumstances of the shooting, the State moved to bind Jackson over for trial. Jackson moved to dismiss the charge, arguing that he had acted in self-defense.[5] The court denied Jackson's motion to dismiss, granted the State's motion, and Jackson was bound over for trial.

---

[5] Self-defense is detailed in Wis. Stat. § 939.48(1), which provides:

> A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. The actor may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference. The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.

7

¶17 On December 9, 2008, Jackson was arraigned on the Information which charged him with one count of first-degree reckless homicide while armed.  Jackson waived a reading of the Information and pled not guilty to the charge.  On February 6, 2009, the court held a pretrial conference and set a trial date of May 4, 2009.

¶18 On February 12, 2009, the State filed an Amended Information which charged Jackson with first-degree intentional homicide by use of a dangerous weapon, contrary to Wis. Stat. §§ 940.01(1)(a), 939.50(3)(a), and 939.63(1)(b), a class A felony.

¶19 On April 7, 2009, Jackson filed a Motion to Admit Character and Habit Evidence.[6]  Jackson offered three prior acts of violence by McCaleb as evidence of his "history of violent and assaultive behavior."  First, Jackson offered McCaleb's 1995 conviction for criminal trespass and disorderly conduct for McCaleb's role as one of a dozen individuals involved in a home invasion altercation where McCaleb pretended to have an object that appeared to be a firearm or other weapon and during the invasion struck an individual repeatedly with a bar stool.  Second, Jackson offered a November 7, 2004, City of Milwaukee

---

[6] Although mentioned in this filing, Jackson never sought to admit evidence of a "habit" under Wis. Stat. § 904.06, nor did the circuit court rule on the issue.  Jackson's motion also cites to Wis. Stat. § 906.08, which governs evidence of the character of a witness, but he similarly fails to develop an argument around that statute.  This opinion, therefore, does not address habit evidence or evidence of the character of a witness as these issues have not been raised on appeal.

assault and battery citation McCaleb received for pushing his girlfriend during a domestic dispute outside of a tavern. Finally, Jackson offered a January 18, 2008, citation McCaleb received for, after being at a party, kicking in the door of an individual named Adam Comp ("Comp") and punching him.

¶20 Jackson argued in his pretrial motion papers that these three prior acts of violence were admissible as other acts evidence under Wis. Stat. § 904.04(2). Jackson also argued that "evidence of a pertinent trait" of McCaleb's character would be admissible under § 904.04(1).[7] Jackson conceded in his motion that:

> Mr. Jackson was not acquainted with Mr. McCaleb and was not aware of these previous acts of violence at the time of the shooting, thus he is not able to admit evidence of these acts pursuant to doctrines set forth in McMorris v. State . . . which permit the admission of specific violent acts of a victim previously known to a defendant in a self-defense case.

---

[7] Wisconsin Stat. § 904.04(1) "Character Evidence Generally" provides, in relevant part:

> Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:
>
> . . . .
>
> (b) Character of victim. Except as provided in s. 972.11(2), evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

9

Jackson nonetheless argued that "in a self-defense case where the violent character of the deceased is an essential element of the defense," testimony concerning the victim's reputation for violence is admissible. Wis. Stat. §§ 904.04(1)(b), 904.05(1). Jackson's motion muddled its discussion of McCaleb's prior violent acts with its reference to reputation evidence. While mentioning reputation evidence, Jackson's motion did not offer any foundation for the admission of reputation evidence. Further, while Jackson's motion contained the phrase "first aggressor," the phrase is merely a quote of the language in § 904.04(1)(b). Jackson never explained how first aggressor is at issue so as to affect the admissibility of character evidence. The pretrial motion focused on the admission of the three specific acts Jackson sought to introduce to prove McCaleb's character.

¶21 On April 21, 2009, the State responded to Jackson's motion. The State opposed Jackson's motion, arguing that McCaleb's prior acts of violence were not admissible. The State argued that the specific acts of violence were irrelevant, being too distant in time and too factually distinct from the circumstances of the case. The State also argued that, assuming the specific acts had any probative value, that value was substantially outweighed by the prejudice that would result from admitting them. The State asserted that these specific acts would unfairly indicate that the victim had acted in conformity with his past conduct. The State did not respond to Jackson's citation to reputation evidence and, like the defendant's

10

motion, focused instead on the admissibility of the three specific acts of violence.

¶22 On April 27, 2009, at the motion hearing, the circuit court denied Jackson's motion. The court concluded that McCaleb's prior specific acts were inadmissible under McMorris because "[i]t's got to be something that the defendant knew. Otherwise, it is doing something improper. So since the defendant did not know about those acts, I don't believe that the defense is allowed to go into those." The court further explained that the specific acts of violence were also not admissible as other acts evidence:

> Again, you have indicated that these two people didn't even know each other, so I don't think that substantiates any type of motive to do something to the defendant. I don't think it even qualifies under the first analysis [sic] with regard to the Sullivan analysis. So I don't even think you can get beyond that, but even if you have, I think the probative value would be substantially outweighed by the danger of prejudice, unfair prejudice, so that evidence is not admissible.

¶23 With the specific acts of violence excluded on both character evidence and other acts evidence grounds, the record could be read to reflect that defense counsel then made an attempt, albeit fleeting, to admit reputation or opinion testimony that McCaleb was a violent person:

> Okay. Then I guess, first of all, I understand the Court's ruling. Then I'm asking how the Court is going to rule then specifically——omitting specific acts but asking specifically I think that it is admissible for the defense to proffer opinion and reputation evidence of Mr. McCaleb, the witness, assuming I can lay a foundation, I believe I can, that

11

Mr. McCaleb is a violent person, the witness' opinion that he is a violent person and that McCaleb had a reputation for violence.

This attempt, however, failed to identify a witness, establish a foundation, or even clarify that what counsel sought to admit was the statement "McCaleb had a reputation for violence."

¶24 The State then focused on the admissibility of character evidence as it related to credibility and stated:

Judge, my understanding of character evidence, the admissible character evidence is it bears on credibility and I don't think that obviously would bear on credibility since the victim is not here to defend himself as to those accusations or opinions, so I don't think they're relevant under the character evidence statute.

The court, perhaps not fully digesting that Jackson's argument had shifted from the admissibility of the specific acts to admissibility of the statement "McCaleb had a reputation for violence," replied:

All right. I agree. I don't believe that those matters would be relevant, so they would not be allowed.

¶25 Despite the court not specifically responding to her reputation evidence argument, counsel did not object to the court's rulings, or ask for a specific ruling on reputation evidence. Further, counsel did not clarify her request and did not request the opportunity to make a proffer. In addition, counsel did not specifically raise the first aggressor issue. Instead, counsel stated:

[DEFENSE COUNSEL]: All right. Okay. So the Court is denying the defense proffer opinion and reputation—

12

THE COURT: Character evidence, Number 2, I believe that is what it is entitled.

[DEFENSE COUNSEL]: Yes.

THE COURT: And that, in its entirety, is denied.

[DEFENSE COUNSEL]: Okay. All right. Well, there was one other matter [relating to a different motion] . . . .

After the court had addressed the balance of the pretrial matters, Jackson's counsel did not insist on a specific ruling from the court, nor did she ask to make a proffer to preserve the issue for appeal, and instead concluded:

> I think that really, except for the more boilerplate motion in limine, that we have then addressed all the issues that the defense has raised in these two motions.

¶26 On October 5, 2009, a six-day jury trial began.[8] In short, the State's theory was that Jackson shot and killed McCaleb because he was jealous and angry, rather than fearful and acting in self-defense. Jackson was the only party who was armed during the confrontation. The State elicited testimony to the effect that Jackson believed he was in a committed relationship with Davis, and that he had received information that she was hugging and kissing McCaleb the night of the shooting. Testimony indicated that McCaleb and Jackson had been arguing and "yelling back and forth" before the fatal shooting. Testimony also indicated that McCaleb charged at Jackson just before McCaleb was shot.

---

[8] May 4, 2009, was Jackson's initial trial date. The court was forced to reschedule Jackson's trial due to a conflict with a prior adjourned homicide case.

13

¶27 Jackson contended that he was acting in self-defense. The jury heard testimony that McCaleb, who was described as being taller, heavier, and more muscular than Jackson, drove up to Jackson's home in a black car with deeply tinted windows. The jury heard testimony that McCaleb was drunk and high and acting belligerently, and that he shouted statements such as "you must got some fuckin' nerve knockin' on somebody's window like that," "you don't know who the fuck I am," and "who the fuck are you?" The jury heard that McCaleb approached one of the witnesses "like to hit" her with his fist "clenched" and "[a]nger in his face" during the course of the argument. The jury also heard that McCaleb stated "you got me fucked up" and that he had "something for you, motherfucker" just before the fatal shot was fired. Jackson's theory of the case was entirely focused on self-defense. Jackson testified himself, and elicited testimony from other witnesses, that he acted in a restrained and reasonable manner, and that he shot McCaleb only after McCaleb charged at him.

¶28 Neither the State nor Jackson specifically argued "first aggressor" until after all the evidence had been presented at trial. To the extent that first aggressor was presented at or before the trial, it was during the State's closing arguments, when it argued "[t]his isn't one-sided. This isn't just Angelo McCaleb acting out of control, creating chaos and being the aggressor out there. This is an argument between both he and Mr. Jackson."

14

¶29 On October 12, 2009, the jury found Jackson guilty of the lesser-included offense of second-degree reckless homicide while armed, contrary to Wis. Stat. §§ 940.06(1) and 939.63(1), a class D felony. The court entered the judgment of conviction against Jackson, and ordered a presentence investigation report.

¶30 On December 15, 2009, Jackson filed a sentencing memorandum with the court. For the first time, in this document, Jackson provided a foundation that Comp knew McCaleb outside of the single violent incident on January 18, 2008, mentioned in Jackson's motion to admit character evidence.

¶31 On January 19, 2010, the court sentenced Jackson to 15 years imprisonment, comprised of ten years of initial confinement to be followed by five years of extended supervision. On January 29, 2010, Jackson filed a notice of intent to pursue postconviction relief.

¶32 On December 6, 2010, after having received two extensions, Jackson filed a notice of appeal in the court of appeals. Thereafter, Jackson sought to dismiss that appeal without prejudice. On March 21, 2011, the court of appeals granted Jackson's motion to dismiss because Jackson needed to first raise the issues in a postconviction motion before the circuit court. State v. Jackson, No. 2010AP2961-CR, unpublished order (Wis. Ct. App. Mar. 21, 2011).

¶33 On June 15, 2011, Jackson filed a postconviction motion for a new trial pursuant to Wis. Stat. § 809.30 in the circuit court. Jackson's motion alleged that the circuit court erred when it denied admission of "the victim's reputation and

15

specific prior acts of violence."[9] Jackson argued that "[t]he court's decision denying the motion was erroneous and prejudiced Jackson because it prevented him from impeaching the prosecution theory that Jackson was the 'aggressor' and the one 'who put all this stuff in motion.'" He argued that the evidence pertained to "determining who was the aggressor, and the defendant's apprehension of danger." Jackson argued that the evidence was admissible regardless of whether Jackson knew of the victim's violent tendencies:

> Notwithstanding the reasonable apprehension of courts to allow character evidence to prove conduct, some form of evidence tending to show the victim's violent character should have been admissible for the limited purpose of supporting the defendant's self-defense claim that the victim was the first aggressor.

Jackson's postconviction motion was the first time that the defense began to outline a possible foundation for reputation testimony, citing to the sentencing memorandum. The postconviction motion seemingly averred that through trial counsel "[t]he defendant sought to offer the testimony of Adam Comp and others to establish McCabe's [sic] reputation and character for violence against strangers and others" citing to the sentencing memorandum. Counsel failed to indicate how this argument was properly made pretrial or how any proffer before

---

[9] Jackson also alleged in his postconviction motion that the jury had been improperly instructed and that he received ineffective assistance of counsel as a result of the defective instruction.

trial established a foundational basis for the reputation testimony.

¶34 In his postconviction motion, Jackson did not assert that the circuit court erred in excluding the three specific violent acts as other acts evidence under Wis. Stat. § 904.04(2).

¶35 On July 21, 2011, the State responded to Jackson's motion for a new trial. The State contended that the circuit court's exclusion of McCaleb's prior acts of violence had been a proper exercise of discretion. The State noted that in the majority of jurisdictions that have adopted the Federal Rules of Evidence, specific prior acts are inadmissible to prove a victim's conduct if the acts are unknown to the defendant because the acts are not relevant to an element of the offense. The State conceded that reputation evidence may be admissible to prove a victim's violent character, but argued that since Jackson failed to lay a proper foundation for reputation testimony, that evidence was properly excluded.

¶36 On October 17, 2011, the circuit court denied Jackson's postconviction motion without an evidentiary hearing. The court concluded that McCaleb's prior violent acts had been properly excluded. The postconviction court reasoned that, as a specific act, Jackson had not shown "how Mr. McCaleb's supposed propensity for throwing the first punch was an essential element of self-defense" and therefore admissible under Wis. Stat. § 904.05(2). Jackson did not assert that he knew McCaleb such that the evidence would establish that "he had any reason to

17

fear Mr. McCaleb." The court noted that Jackson did not "offer any authority for the proposition that it is essential to a claim of self-defense to demonstrate that the victim has a violent character." The court concluded, "[a]nd think about it – do we generally allow defendants to put on a self-defense case without evidence that the victim had a propensity for violence? All the time; hence evidence of the kind Mr. Jackson wished to introduce at trial cannot be deemed essential to his defense." As to Jackson's argument that he needed to introduce the specific acts in order to "impeach the prosecution theory that Jackson was the 'aggressor' and the one 'who put all this stuff in motion,'" the court also noted that the first aggressor issue was not even arguably raised until closing arguments, and so it was "too late" to introduce evidence at that point. The court concluded that Jackson failed to raise, at any point earlier in the trial, "any argument or evidence needed rebutting with evidence showing that Mr. McCaleb was the first aggressor."

¶37 The postconviction court also concluded that the specific acts evidence "does not tend to show that Mr. McCaleb had the character of a first aggressor." The court outlined that even assuming "specific instances of the victim's violent past were generally admissible, the court would not have admitted the three particular instances offered by Mr. Jackson here." The court also outlined why each instance would be inadmissible. The court noted the evidentiary deficiencies, stating that the 1995 and 2004 acts "lacked sufficient probative value." The court went on, concluding that the 2008 act "would

18

have triggered a satellite trial over whether . . . Mr. McCaleb was the first aggressor or not, the kind of sideshow that courts have long lamented as the reason for excluding character evidence consisting of specific instances of conduct rather than reputation or opinion testimony."

¶38 The court noted that in some circumstances a victim's reputation for violence could be admissible, but concluded that Werner v. State, 66 Wis. 2d 736, 226 N.W.2d 402 (1975), precludes the use of specific acts of violence to prove the first aggressor issue: "[e]vidence of specific acts of violence from Mr. McCaleb's past are not admissible to prove that he has a propensity for violence or that Mr. Jackson was acting in self-defense."

¶39 On November 21, 2011, Jackson filed a notice of appeal from the judgment of conviction entered on January 19, 2010, and from the order denying his motion for a new trial entered on October 17, 2011. Jackson renewed the arguments he raised in his postconviction motion, but framed the evidentiary issue differently. Rather than arguing that the three specific acts of violence were improperly excluded, Jackson conceded that "[i]f . . . the defendant was not acquainted with the victim or his specific instances of violent conduct prior to their violent encounter, the defendant is limited to introducing evidence of the victim's violent character by way of reputation or opinion evidence." Jackson's argument, for the first time, focused on the exclusion of testimony as to McCaleb's reputation for violence, rather than the exclusion of the specific prior acts.

19

He argued that not allowing testimony regarding McCaleb's reputation for violence denied him the opportunity to show that McCaleb possessed a violent character and was likely the first aggressor. Jackson did not appeal the circuit court's exclusion of McCaleb's prior violent conduct as other acts evidence under Wis. Stat. § 904.04(2).

¶40 On May 9, 2012, the State filed its brief in the court of appeals. The State noted the shift in Jackson's position, and then argued that reputation evidence is also inadmissible where the defendant is unaware of the victim's reputation. The State also argued that in any event Jackson had failed to lay a proper foundation for any reputation evidence.

¶41 On October 10, 2012, the court of appeals affirmed the circuit court. Jackson, No. 2011AP2698-CR, unpublished slip op., ¶¶14, 23. The court of appeals concluded with respect to the exclusion of evidence that "a defendant's prior knowledge of the victim's character, either by reputation or specific acts, has consistently been a prerequisite to admission of such evidence as part of a self-defense claim." Id., ¶21. Because Jackson did not have knowledge of McCaleb's violent character, the court of appeals concluded that the circuit court had properly excluded evidence of that character. Id. Although Jackson did not raise it in his briefing, the court of appeals also rejected the argument that the prior acts could be admitted to prove "McCaleb's motive, opportunity and lack of accident or mistake," reasoning that none of those were an element of Jackson's self-defense claim. Id., ¶22.

¶42 Jackson petitioned this court for review, which we granted on February 12, 2013.

## III. STANDARD OF REVIEW

¶43 "This court will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion." Weborg v. Jenny, 2012 WI 67, ¶41, 341 Wis. 2d 668, 816 N.W.2d 191 (citing State v. Ringer, 2010 WI 69, ¶24, 326 Wis. 2d 351, 785 N.W.2d 448). "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record." Id. (citing Johnson v. Cintas Corp. No. 2, 2012 WI 31, ¶22, 339 Wis. 2d 493, 811 N.W.2d 756).

¶44 "[A] circuit court's erroneous exercise of discretion does not warrant a new trial if the error was harmless." Weborg, 341 Wis. 2d 668, ¶43 (citing State v. Harris, 2008 WI 15, ¶85, 307 Wis. 2d 555, 745 N.W.2d 397). "Application of the harmless error rule presents a question of law that this court reviews de novo." Id. (citing State v. Ziebart, 2003 WI App 258, ¶26, 268 Wis. 2d 468, 673 N.W.2d 369).

## IV. ANALYSIS

¶45 Our analysis begins with the understanding that "the circuit court's decisions to admit or exclude evidence are entitled to great deference . . . ." State v. Head, 2002 WI 99, ¶43, 255 Wis. 2d 194, 648 N.W.2d 413 (citing Martindale v. Ripp, 2001 WI 113, ¶29, 246 Wis. 2d 67, 629 N.W.2d 698). This court will reverse a discretionary decision only if the circuit

21

court's exercise of discretion "is based on an error of law." Id.

¶46 In this case, the circuit court was called upon, in part, to consider whether character evidence was admissible under Wis. Stat. §§ 904.04 and 904.05. As a general rule, "[e]vidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion . . . ." Wis. Stat. § 904.04(1).

¶47 An exception to this general rule is the admission of "pertinent" character evidence of a victim offered by a criminal defendant:

> Except as provided in s. 972.11(2), evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

Wis. Stat. § 904.04(1)(b).

¶48 When the exception has been satisfied, one way character evidence may be presented is in the form of reputation or opinion testimony. Wis. Stat. § 904.05(1). When the exception has been satisfied and a defendant seeks to admit specific instances of the victim's prior conduct, however, it must be the case that "character or a trait of character" of the victim "is an essential element of a charge, claim, or defense." Wis. Stat. § 904.05(2).

22

¶49  In his pretrial motion, Jackson sought to admit three prior violent acts by McCaleb in support of his argument that he shot McCaleb in self-defense.  Jackson argued that the prior acts were admissible in two different ways.  First, Jackson argued that McCaleb's violent acts were admissible as other acts evidence under Wis. Stat. § 904.04(2).  Second, Jackson argued that McCaleb's prior violent acts were admissible as evidence of McCaleb's "character for violence" under Wis. Stat. §§ 904.04(1)(b), 904.05(1) and (2).  Although mentioned in passing, Jackson's motion and argument never focused on the admission of McCaleb's "reputation for violence," but rather the argument before the circuit court focused on the admissibility of McCaleb's specific acts.  In other words, the focus of both the pretrial and postconviction motions, and therefore the focus of the court's attention, was on Jackson's attempt to establish McCaleb's character for violence by introducing these three specific acts of violence.  Jackson never established a foundation or made a proffer for the admission of the statement "McCaleb had a reputation for violence."  Jackson also never requested a specific ruling from the court regarding the admissibility of that evidence.

¶50 Reputation evidence, such as the statement "McCaleb had a reputation for violence," is not proven by the admission of testimony of specific acts.  Specific act testimony has far more persuasive value than the one-liner "X had a reputation for violence," and so it is much more appealing to introduce specific acts evidence.  Not surprisingly then, the focus of

23

Jackson's counsel, the State, and the trial court was on the admission of the three specific acts, and not general reputation testimony.

¶51 The record reflects that counsel never clearly argued to lay the foundation and for admissibility of reputation testimony before the circuit court. If Jackson's counsel did intend that reputation testimony be admitted, when it seemed the State and the court were not following that argument, counsel should have clarified the issue, laid the foundation, and requested a specific ruling on reputation evidence. Instead, the moving papers do not set forth the foundation for admissibility, an oral proffer was not made at argument, and thus, the issue was not properly preserved for appeal.

¶52 Pretrial, Jackson did not argue that the evidence he sought to introduce would be "McCaleb had a reputation for violence." He did not frame his analysis in terms of the admission of general reputation evidence to establish first aggressor. He did not argue that McCaleb was the first aggressor at trial, although he claims the State argued first aggressor in its closing argument. Jackson's first mention of introducing general "reputation for violence" evidence to establish first aggressor was in his postconviction motion. Although Jackson now argues that the defect in the circuit court's ruling was exclusion of general reputation testimony, it is also telling that his pretrial and postconviction motions are primarily cast in terms of the admissibility of the three specific acts he offered in his pretrial motion. This court has

24

held that "all claims of error that a criminal defendant can bring should be consolidated into one motion or appeal." State v. Lo, 2003 WI 107, ¶44, 264 Wis. 2d 1, 665 N.W.2d 756 (emphasis in original). Claims that are not so consolidated are barred "absent a showing of a sufficient reason for why the claims were not raised . . . ." Id.

¶53 Character evidence, in the form of reputation, opinion, or specific acts, and other acts evidence may appear intertwined, but each requires a different legal analysis for admission. Jackson seemingly conflated character evidence, by reputation and specific acts, and other acts evidence in his motions before the circuit court. Even though reputation evidence is the focus of this appeal, in an effort to clarify the law this opinion will address other acts evidence, character shown by reputation or opinion evidence, and character shown by specific incidents of conduct. Each evidentiary principle carries a unique analysis. In this case, however, we conclude that the circuit court properly exercised its discretion in excluding the evidence under any of these principles.

### A. Other Acts Evidence

¶54 Jackson argued in his pretrial motion that three prior acts of violence were admissible as other acts evidence under Wis. Stat. § 904.04(2). Postconviction, Jackson has not argued that the trial court erred in excluding the other acts evidence. Pretrial, Jackson asserted that the 1995 disorderly conduct conviction, the 2004 assault and battery citation, and the 2008 disorderly conduct citation were relevant to show McCaleb's

25

"motive, opportunity and lack of accident or mistake." The circuit court rejected these arguments and concluded that the evidence was not offered for an acceptable purpose, was irrelevant to the case, and alternatively that the probative value of the evidence was outweighed by the danger of prejudice.

¶55 The admissibility of other acts evidence is addressed using a three-step analysis:

(1) Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?

(2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis. Stat. § (Rule) 904.01? The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence.

(3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence? See Wis. Stat. § (Rule) 904.03.

State v. Sullivan, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998) (footnote omitted).

26

¶56 Here, the circuit court properly excluded the evidence of McCaleb's past violent conduct under each of the three prongs of the Sullivan test.

¶57 First, although his motion recited the language from Wis. Stat. § 904.04(2) and Sullivan, Jackson failed to connect the specific instances of violence with any of the permissible purposes described in those sources. The Sullivan court made clear that the proponent of other acts evidence has the burden of showing how the evidence meets each prong of the analysis. 216 Wis. 2d at 774. A separate analysis is required for each piece of evidence. State v. Hunt, 2003 WI 81, ¶43, 263 Wis. 2d 1, 666 N.W.2d 771.

¶58 Jackson purportedly offered the evidence to show McCaleb's "motive, opportunity and lack of accident or mistake" but he never explained how the evidence met the criteria for admission as other acts evidence. The circuit court determined that "you have indicated that these two people didn't even know each other, so I don't think that substantiates any type of motive to do something to the defendant. I don't think it even qualifies under the first analysis [sic] with regard to the Sullivan analysis." Simply stated, Jackson failed to show how the other acts evidence was related to an acceptable purpose under the statute.

¶59 Second, we agree with the circuit court that Jackson failed to show how the other acts evidence is relevant under Wis. Stat. § 904.04(2). Jackson did not show that the past conduct related to a consequential fact, nor did he show its

27

probative value. In a first-degree intentional homicide case, self-defense is applicable if the defendant (1) reasonably believed that he or she was facing a threat of "imminent death or great bodily harm," and (2) reasonably believed the amount of force used was "necessary to prevent" the threat. See Wis. Stat. § 939.48(1); Wis. JI——Criminal 805. At least in part because he was unaware of McCaleb's past conduct, the reasonableness of Jackson's beliefs was not impacted by that conduct. Thus, as the circuit court concluded, these specific acts by McCaleb were irrelevant.

¶60 Third, the circuit court determined that the probative value was substantially outweighed by the prejudice:

> I don't think it even qualifies under the first analysis [sic] with regard to the Sullivan analysis. So I don't even think you can get beyond that, but even if you have, I think the probative value would be substantially outweighed by the danger of prejudice, unfair prejudice, so that evidence is not admissible.

¶61 For purposes of other acts evidence, the circuit court properly applied the facts before it to the proper legal standard and excluded the three prior acts of violence. Based on the record, we cannot conclude that the circuit court erroneously exercised its discretion. Given that Jackson has focused his appeal on character evidence, we can conclude that he now agrees.

## B. Character Evidence

¶62 Before the circuit court, Jackson argued that three prior acts could be admitted to show "evidence of a pertinent trait" of McCaleb's character under Wis. Stat. § 904.04(1).

28

Jackson also argued that "in a self-defense case where the violent character of the deceased is an essential element of the defense," testimony concerning the victim's reputation for violence is admissible. Jackson did not identify any witnesses in his motion who could testify that "McCaleb had a reputation for violence," and he did not lay a foundation for the admissibility of that general testimony. Jackson also did not show how McCaleb's violent character was "an essential element of a charge, claim, or defense," such that the specific acts were admissible under Wis. Stat. § 904.05(2).

¶63 The circuit court rejected Jackson's arguments and concluded: "I think the probative value would be substantially outweighed by the danger of prejudice, unfair prejudice, so that evidence is not admissible."

¶64 Generally speaking, "[e]vidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion . . . ." Wis. Stat. § 904.04(1). "[T]he law of evidence disdains the use of character to show propensity to behave in a certain way." 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 405.1, at 225 (3d ed. 2008). We agree.

¶65 There are, however, exceptions to this general rule, one of which is evidence of a "pertinent character trait" of the deceased in a homicide prosecution. Wis. Stat. § 904.04(1)(b). When character is at issue, proof may be made at trial by

29

reputation testimony, opinion testimony, and by specific acts. Wis. Stat. § 904.05(1) and (2).

¶66 Reputation testimony is one form of hearsay in which a witness will testify about the subject's reputation within the community. Opinion testimony permits the witness to testify about his or her own opinion of the subject's character. Neither reputation nor opinion testimony include evidence of specific instances of conduct, except perhaps in cross-examination or rebuttal.

¶67 Reputation and opinion testimony have significant persuasive limitations before a jury because they tend to be of a sweeping and conclusory nature. Reputation testimony, in particular, "has been aptly but disparagingly described as the 'irresponsible product of multiple guesses and gossip.'" Blinka, supra, § 405.2, at 226. This type of reputation testimony, which would tend to show that "McCaleb had a reputation for violence," does not permit the jury to hear about specific acts of violence.

¶68 On the other hand, the introduction of specific acts to prove character requires a different analysis. "Of the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time it possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." Advisory Committee Notes-1972 Proposed Rules, Fed. R. Evid. 405. A court may properly consider the value of the admissibility of specific acts against competing interests such as prejudice,

confusion, or creating a trial within a trial. In other words, does the probative value outweigh the prejudicial effect? The use of character evidence shown through specific acts requires even more than the foundation required for the admission of reputation or opinion testimony. To admit specific acts to show character, the character or trait of character must be "an essential element of a charge, claim, or defense." Wis. Stat. § 904.05(2). The circuit court still retains great discretion in determining whether to admit the evidence.

¶69 In his pretrial motion, Jackson stated that McCaleb's violent character was "pertinent" to his self-defense theory, but made little effort to explain further. At the circuit court level, Jackson had sought to prove McCaleb's character for violence by introducing the three specific acts of violence under Wis. Stat. § 904.05(2). Critically, Jackson never focused his argument on the admissibility of the statement "McCaleb had a reputation for violence" in the circuit court. Instead, he primarily sought to prove that McCaleb was violent by introducing specific instances of conduct. Jackson now claims that McCaleb's violent character was relevant to determining who the first aggressor was in their confrontation such that the circuit court ought to have allowed testimony that "McCaleb had a reputation for violence." On appeal, Jackson has abandoned the argument that the circuit court erred when it denied admission of the specific instances of conduct. Jackson's change of heart does not afford him the relief he requests.

31

¶70 We first address whether Jackson laid a proper foundation for admitting reputation evidence——"McCaleb had a reputation for violence." Second, even though Jackson apparently now agrees that the offered specific prior acts are inadmissible, we address whether the circuit court erroneously excluded evidence of McCaleb's violent character through the specific instances offered. In each instance, we conclude that the circuit court's exercise of discretion was not erroneous.

### 1. Reputation Evidence

¶71 Jackson asks this court to find that the character evidence "McCaleb had a reputation for violence" is admissible despite the fact that Jackson was unaware of that reputation at the time of the shooting. We first discuss whether Jackson laid a proper foundation for the reputation evidence. We hold that he did not. We further conclude that Jackson failed to make a proffer regarding reputation evidence, and so failed to preserve the issue for appeal. Wis. Stat. § 901.03(1); State v. Winters, 2009 WI App 48, ¶¶17-19, 317 Wis. 2d 401, 766 N.W.2d 754 (holding that a party challenging a trial court's ruling excluding evidence is obligated to make an offer of proof).

¶72 "The foundation for reputation is deliberately simplistic. Properly framed, the reputation testimony can be elicited in less than a minute. The streamlined foundation befits the evidence's modest probative value." Blinka, supra, § 405.2, at 226. A proper foundation for reputation testimony requires showing four elements:

32

- The witness belongs to, or is knowledgeable about, a community (residential, business, or social) to which the subject belongs.

- The subject has a reputation for a particular character trait.

- The witness knows the reputation.

- The witness testifies to the reputation.

Id.

¶73 Despite these relative modest requirements, Jackson's motions before the trial court failed to lay a foundation for reputation testimony. At most, Jackson's postconviction motion pointed to "Comp and others" as witnesses who could testify to "[McCaleb's] reputation and character for violence." Notably, such reference was not made at the pretrial stage. At no time did Jackson identify the community Comp shared with McCaleb, nor did he include any information regarding Comp's knowledge of McCaleb beyond the single interaction the two had in January 2008. Thus, at the pretrial stage, Jackson made it less than clear that he was seeking this general reputation testimony. The focus was seemingly on the specific acts. Without any foundation, the circuit court was in no position to make the findings necessary to properly admit the reputation testimony.

¶74 At most, Comp's knowledge of McCaleb's reputation was included for the first time as an attachment in Jackson's sentencing memorandum. Even in Jackson's postconviction motion, the focus remained on the specific act evidence rather than general reputation testimony. At least the postconviction

33

motion began to discuss some foundation for the admission of reputation testimony.

¶75 Additionally, assuming Jackson believed the trial court had erred, he never requested the opportunity to proffer a foundation for admitting McCaleb's reputation for violence. Jackson bore the responsibility to make an offer of proof in order to preserve the issue for appeal.  Winters, 317 Wis. 2d 401, ¶19.  Here, Jackson's counsel did not make a further proffer to the court orally or in writing, nor did counsel clarify that a reputation evidence ruling was sought from the court.

¶76 Jackson now asks this court to consider the additional information about Comp provided postconviction, rather than relying on the original motion papers and argument transcript. We decline to do so because:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and
>
>         . . .
>
>        (b) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

Wis. Stat. § 901.03(1); see also Winters, 317 Wis. 2d 401, ¶24.

¶77 Consequently, the circuit court did not err in precluding admission of reputation evidence because it was never provided with a foundation to admit that evidence, and we are left with no proffer regarding the evidence.

34

¶78 Although it was not clearly raised either before the trial or postconviction courts, Jackson now argues that McCaleb's violent reputation, rather than evidence of his specific past acts of violence, is relevant to determining whether he was the first aggressor in the shooting. While it may be the best argument Jackson now has on appeal, the record below demonstrates that this was not the argument being advanced by trial counsel, and was not adequately presented to the trial court such that the court would recognize the evidence that it was being called upon to admit. The trial court did not erroneously exercise its discretion in not deciding a character evidence argument that it never knew was being made to the court.

¶79 It is certainly true that in some self-defense cases there is a genuine factual dispute over which party started a confrontation. In those cases, evidence of the victim's character for violence might be admissible and the circuit court is endowed with the discretion to make that determination. See, e.g., Werner v. State, 66 Wis. 2d 736, 226 N.W.2d 402 (1975). The circuit court is empowered to balance the "modest" probative value of the reputation testimony against the prejudice and the general prohibition against propensity evidence. Wis. Stat. §§ 904.01, 904.03.

¶80 In this case, however, not only is the foundation for the character evidence missing and the proffer insufficient to preserve the issue for appeal, but the circuit court was not specifically asked to rule on the admissibility of testimony

35

"McCaleb had a reputation for violence" in reference to showing first aggressor. To the extent that the circuit court could have perceived that counsel sought to use this reputation evidence to address the first aggressor issue, the most relevant testimony regarding McCaleb being the first aggressor was already before the jury. The jury heard from five witnesses who testified to the events that led up to the shooting and the fact that McCaleb was undisputedly violent on the evening in question. Hearing that "McCaleb had a reputation for violence" would have been anticlimactic at best. Consequently, had a proper foundation for the evidence been laid, and the circuit court been properly presented with a request to admit testimony that "McCaleb had a reputation for violence" on the first aggressor issue, it could still have reasonably concluded that it would be cumulative, that the danger of the jury drawing an improper propensity inference and the likelihood of prejudice outweighed the probative value.

### 2. Specific Acts of Violence

¶81 The State and Jackson now apparently agree that specific acts evidence is not admissible in this case. Jackson does not raise the issue on appeal. Nonetheless, we will briefly address this type of character evidence. Character evidence can be admissible in the form of specific instances of conduct. However, the foundation for the admissibility of specific instances of conduct is different than the foundation for general reputation or opinion testimony. If character is properly at issue and the exception to admissibility of

propensity evidence is met, specific acts may still be offered only if "character or a trait of character . . . is an essential element of a charge, claim, or defense . . . ." Wis. Stat. § 904.05(2). Nonetheless, even if character or a trait of character is an essential element, the circuit court is endowed with the authority to exercise its discretion regarding admissibility. In this case, a character trait was not an element that the State had to prove, nor was it an element of Jackson's self-defense claim. Thus the circuit court properly excluded evidence of McCaleb's prior violent acts. The court ruled: "It's got to be something that the defendant knew. Otherwise, it is doing something that's improper. So since the defendant did not know about those acts, I don't believe that the defense is allowed to go into those." The decision of the circuit court was not clearly erroneous in excluding this evidence.

¶82 We have held that specific prior acts of violence by the victim may be admissible when the defendant is aware of the acts. In the case at issue, we are not presented with traditional McMorris evidence. In McMorris, the circuit court concluded the prior acts of violence were known to the defendant. As a result, the prior acts were admissible to show that the defendant's apprehension of the threat from the victim was reasonable, and thus, went to an essential element of self-defense. Wis. Stat. § 904.05(2); Wis. JI——Criminal 805. Jackson never claimed to have such knowledge in the present

37

case. Thus, the requested acts are not admissible as McMorris evidence.

¶83 In McMorris, the court held:

> When the issue of self-defense is raised in a prosecution for assault or homicide and there is a factual basis to support such defense, the defendant may, in support of the defense, establish what the defendant believed to be the turbulent and violent character of the victim by proving prior specific instances of violence within his knowledge at the time of the incident.

58 Wis. 2d at 152.[10]

¶84 Specific incidents of conduct to prove character are not admissible unless "character or a trait of character . . . is an essential element of a charge, claim, or defense." Wis. Stat. § 904.05(2). "[T]he law of evidence disdains the use of character to show propensity to behave in a certain way." Blinka, supra, § 405.1, at 225. Allowing admission of a victim's specific prior acts of violence, unknown to the defendant, would here invite just such an improper propensity inference. Thus, even if Jackson had argued the first aggressor issue to the trial court, such prior specific acts would nonetheless be inadmissible because "character or a

---

[10] Similarly, in State v. Head this court held "McMorris evidence may not be used to support an inference about the victim's actual conduct during the incident." 2002 WI 99, ¶128, 255 Wis. 2d 194, 648 N.W.2d 413. But "[i]t may be admitted because it 'bear[s] on the reasonableness of the defendant's apprehension of danger at the time of the incident.'" Id. (citing McMorris, 58 Wis. 2d at 149); see also Werner v. State, 66 Wis. 2d 736, 226 N.W.2d 402 (1975).

trait of character" was not "an essential element of a charge, claim, or defense" in this case. Apparently Jackson now agrees.

## C. Harmless Error

¶85 We conclude that the circuit court did not erroneously exercise its discretion. Nonetheless, if we were to assume that it was error for the trial court to exclude testimony that "McCaleb had a reputation for violence," we also conclude any such error on the part of the court was harmless.

¶86 The State bears the burden of proving that the error was harmless. Sullivan, 216 Wis. 2d at 792. The court deems an error harmless if it cannot conclude "beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." State v. Harvey, 2002 WI 93, ¶49, 254 Wis. 2d 442, 647 N.W.2d 189 (citing Neder v. United States, 527 U.S. 1 (1999)).

¶87 When a court has improperly admitted evidence, reversal is not warranted "unless an examination of the entire proceeding reveals that the admission of the evidence has 'affected the substantial rights' of the party seeking the reversal." State v. Armstrong, 223 Wis. 2d 331, 368, 588 N.W.2d 606 (1999); see also Wis. Stat. § 901.03(1). In order to support reversal, there must be a "'reasonable probability that, but for . . . [the] errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Armstrong, 223 Wis. 2d at 369 (quoting Strickland v. Washington, 466 U.S. 668, 694-95 (1984)).

39

¶88 In this case, considering the trial as a whole, we conclude that, if excluding "McCaleb's reputation for violence" was error, that error was harmless.[11] Even assuming the issue had been properly before the circuit court, reputation testimony is of "modest probative value." Blinka, supra, § 405.2, at 227. Thus, even if it had been admitted, the general reputation evidence "McCaleb had a reputation for violence" would have paled in comparison to the detailed evidence that was already before the jury.

¶89 Although the jury did not hear the sentence "McCaleb had a reputation for violence," the jury nonetheless heard that McCaleb was violent. The jury heard testimony that McCaleb, who was described as being taller, heavier, and more muscular than Jackson, drove up to Jackson's home in a black car with deeply tinted windows. The jury heard testimony that McCaleb had a blood alcohol content of .18 and was acting belligerently. When referring to Jackson, McCaleb told Davis to "fuck that nigger." He shouted statements such as "you've got some fuckin' nerve knockin' on a car window," "you don't know who the fuck I am," and "who the fuck are you?" The jury heard that McCaleb came toward one of the females "like to hit" her with his fist "clenched" and that he had "[a]nger in his face." The jury also

---

[11] Here, we conclude that this presumed error by the court was harmless. In this case, it follows that counsel's errors regarding reputation testimony could not have prejudiced Jackson, such that counsel was ineffective. See State v. Carter, 2010 WI 40, ¶37, 324 Wis. 2d 640, 782 N.W.2d 695 (citing Strickland v. Washington, 466 U.S. 668, 691-93 (1984)).

heard that McCaleb got "so mad" and went back to his car as if to get something and returned from the car "speed-walking" toward Jackson with one of his hands behind his back yelling "you got me fucked up" and that he had "something for you, motherfucker" just before Jackson fired the fatal shot.

¶90 Simply adding general reputation testimony that "McCaleb had a reputation for violence" to this substantial body of evidence does not create the "reasonable probability" of a different outcome.  Armstrong, 223 Wis. 2d at 369.  Moreover, any reputation witness would have been subject to rigorous cross-examination.  At best, that one sentence——in light of all the evidence presented at trial——would have been fleeting and cumulative.

¶91 Therefore, assuming the circuit court erred in denying admission of the "modestly" probative evidence, "McCaleb had a reputation for violence," that error was harmless in light of all the evidence regarding McCaleb being violent on the evening in question.

V. CONCLUSION

¶92 We hold that the circuit court did not erroneously exercise its discretion in denying Jackson's motion to admit character evidence.  The circuit court properly determined that in order for specific acts of violence to be admissible, "character or a trait of character of a person" must be "an essential element of a charge, claim, or defense."  In a homicide case where a claim of self-defense is raised, character evidence may be admissible as evidence of the defendant's state

41

of mind so long as the defendant had knowledge of the prior acts at the time of the offense.  McMorris, 58 Wis. 2d at 152.  We also conclude that the circuit court did not err in denying Jackson's motion to admit testimony that the victim had a reputation for violence under Wis. Stat. § 904.05(1).  Jackson failed to establish a proper foundation for the court to determine that evidence of the victim's reputation for violence was admissible.  We further conclude that, even assuming error occurred, that error was harmless.  Therefore, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶93 ANN WALSH BRADLEY, J. *(concurring).* I agree with the majority and dissent when they determine that evidence of the victim's reputation for violence offered to demonstrate the identity of the first aggressor is relevant to a defendant's self-defense claim. Majority op., ¶¶47-48, 65, 79; dissent, ¶¶96-97, 113.

¶94 I further determine, for reasons set forth in the dissent, that the circuit court erroneously denied the defendant's motion to admit evidence of the victim's reputation without allowing the defendant an opportunity to present a better foundation for reputation evidence. Therefore, I join Part I of the dissent.

¶95 I ultimately conclude, however, that for reasons set forth in the majority opinion, the error is harmless. As the majority notes, in order to reverse a conviction based on an erroneous evidentiary ruling, there must be a reasonable probability that the outcome of the trial would have been different without the error. Majority op., ¶87 (citing State v. Armstrong, 223 Wis. 2d 331, 368, 588 N.W.2d 606 (1999)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 368 (quoting Strickland v. Washington, 466 U.S. 668, 694-95 (1984)). I agree with the majority that it is unlikely that the reputation evidence would have affected the outcome in this case. Therefore, I join Part IV. C. of the majority opinion and respectfully concur.

1

¶96 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting)*. I agree with the majority opinion's implicit holding that evidence of the victim's reputation for violence is admissible on the issue of first aggressor when a defendant raises a self-defense claim, even when the defendant is unaware of the reputation.[1] Majority op., ¶¶47, 48, 79.

---

[1] Wisconsin Stat. § 904.04(1)(b) provides:

(1) Character evidence generally. Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

. . . .

(b) Character of victim. Except as provided in s. 972.11(2), evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor . . . .

"Exception [904.04(1)](b) makes clear that evidence in a homicide case claiming the victim was the first aggressor affords the prosecution the right to introduce rebutting evidence of the peacefulness of the victim." Wisconsin Rules of Evidence § 904.04, 59 Wis. 2d at R76 (Judicial Council Committee's Note) (1974).

The Federal Advisory Committee's Note elaborates:

Character evidence is susceptible of being used for the purpose of suggesting an inference that the person acted on the occasion in question consistently with his character. This use of character is often described as "circumstantial." Illustrations are: evidence of a violent disposition to prove that the person was the aggressor in an affray . . . .

1

¶97 Character evidence of a victim's violent disposition in the form of reputation evidence to prove that the victim was the first aggressor in an affray is routinely accepted in the evidence literature as a paradigmatic admissible use of character evidence.[2]

¶98 I disagree, however, with the majority opinion's analysis that the defendant failed to lay a proper foundation[3] for the introduction of evidence of the victim's reputation and failed to follow through with a self-defense claim that the victim was the first aggressor. I also disagree with the majority opinion's harmless error analysis.

---

> In most jurisdictions today, the circumstantial use of character is rejected but with important exceptions: . . . (2) an accused may introduce pertinent evidence of the character of the victim, as in support of a claim of self-defense to a charge of homicide . . . and the prosecution may introduce similar evidence . . . in a homicide case, to rebut a claim that deceased was the first aggressor, however proved . . . .

Wisconsin Rules of Evidence § 904.04, 59 Wis. 2d at R76-R77 (Federal Advisory Committee's Note).

[2] See 1A Wigmore on Evidence, § 63 at 1365 (Peter Tillers ed., 1983) ("[T]he most frequent use of character evidence against a victim is when a violent crime is charged, to show that the victim was the first aggressor."); 1 McCormick on Evidence § 193 (Kenneth S. Broun ed., 7th ed. 2013) (noting that when "there is a dispute as to who was the first aggressor," "the accused can introduce evidence of the victim's character for turbulence and violence" limited to "reputation or opinion rather than to specific acts"); 22A Fed. Practice & Procedure: Evidence § 5237 (Kenneth W. Graham, Jr. ed., 2d ed. 2013) (identifying "'violent disposition' to prove that the victim was the aggressor in an affray" as a pertinent trait admissible under Federal Rule of Evidence 404(a)(2)).

[3] See majority op., ¶¶8, 49, 51, 71-77.

2

I

¶99 The majority opinion mistakenly concludes that the defendant failed to lay a proper foundation to introduce evidence of the victim's reputation and failed to present the issue that the victim was the first aggressor as part of his self-defense claim.

A

¶100 The majority opinion zeroes in on the motion papers to show that the defendant did not properly raise the issue of the victim's reputation for violence to show that the victim was the first aggressor. Majority op., ¶¶73-75.

¶101 On the contrary, the motion clearly sought admission of evidence of the victim's violence in the form of reputation evidence. Here is the relevant portion of the defendant's motion carefully distinguishing between evidence of previous acts and evidence of the victim's reputation for violence and seeking admission of the latter:

> 3. Mr. Jackson was not acquainted with [the victim] and was not aware of these previous acts of violence at the time of the shooting, thus he is not able to admit evidence of these acts pursuant to doctrines set forth in McMorris v. State, 58 Wis. 2d 144 (1973) and State v. Daniels, 160 Wis. 2d 85 (1991), which permit the admission of specific violent acts of a victim previously known to a defendant in a self defense case. However, Wisconsin Statutes § 904.04(1)(b) provides for the admissibility of "evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor." Thus in a self defense case where the violent character of the deceased is an essential element of the defense, opinion and

3

reputation testimony concerning the victim's reputation for violence is relevant and admissible and a trial court abuses its discretion in excluding such testimony. State v. Boykins, 119 Wis. 2d 272, 279 (Ct. App. 1984). Thus such reputation and opinion evidence is permitted to show that the victim acted in conformity with his character for violence (Wis. Stat. § 904.04(1)(b) and § 904.05(1).

¶102 Moreover, the defendant's motion papers do not represent the defendants' entire pretrial argument on the admission of evidence of the victim's reputation for violence.

¶103 In the pretrial hearing on the defendant's motion to introduce evidence of the victim's character in the form of prior acts or reputation and opinion testimony, the defendant attempted to lay a foundation for the proposed testimony about the victim's reputation. The result: the circuit court abruptly and completely precluded defense counsel from laying her foundation for testimony about the victim's reputation.

¶104 After the circuit court denied admission of the defendant's "other acts" evidence under Wis. Stat. § 904.04(2), defense counsel attempted to offer a foundation for evidence of the victim's reputation.

¶105 The pertinent part of the transcript is as follows:

[DEFENSE COUNSEL]: Okay. Then I guess, first of all, I understand the Court's ruling. Then I'm asking how the Court is going to rule then specifically——omitting specific facts but asking specifically I think that it is admissible for the defense to proffer opinion and reputation evidence of [the victim], the witness, assuming I can lay a foundation, I believe I can, that [the victim] is a violent person, the witness' opinion that he is a violent person and that [the victim] had a reputation for violence.

THE COURT: Mr. Williams?

4

[PROSECUTOR]: Judge, my understanding of character evidence, the admissible character evidence is it bears on credibility and I don't think that obviously would bear on credibility since the victim is not here to defend himself as to those accusations or opinions, so I don't think they're relevant under the character evidence statute.

THE COURT: All right. I agree [with the prosecutor]. I don't believe that those matters would be relevant, so they would not be allowed.

[DEFENSE COUNSEL]: All right. Okay. So the court is denying the defense proffer opinion and reputation——

THE COURT: Character evidence, Number 2, I believe that is what it is entitled.

[DEFENSE COUNSEL]: Yes.

THE COURT: And that, in its entirety, is denied.

¶106 Defense counsel made a sufficient offer of proof. "The offer of proof need not be stated with complete precision or in unnecessary detail but it should state an evidentiary hypotheses underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt." State v. Dodson, 219 Wis. 2d 65, 73, 580 N.W.2d 181 (1998) (citing Milenkovic v. State, 86 Wis. 2d 272, 284, 272 N.W.2d 320 (Ct. App. 1978)).

¶107 In any event, despite defense counsel's statement that she could lay a foundation for the witness's testimony regarding the victim's reputation, the circuit court accepted the prosecutor's mistaken objection to the defendant's motion. The prosecutor erroneously stated the reputation was character evidence being offered for the credibility of the victim and not relevant.

5

¶108 The circuit court never allowed defense counsel to lay a better foundation, but instead simply agreed with the prosecutor's mistaken objection and ruled that the circuit court didn't "believe that those matters would be relevant" (emphasis added).

¶109 Instead of addressing defense counsel's attempt to offer evidence of the victim's reputation for violence, the circuit court addressed evidence of specific acts, never coming to grips with the defendant's proposed reputation testimony. Indeed, the majority opinion concedes that the circuit court did not digest "that Jackson's argument had shifted from the admissibility of the specific acts to admissibility of the statement 'McCaleb had a reputation for violence.'" Majority op., ¶24.

¶110 The majority opinion asserts that the circuit court's preclusion of the defendant's attempt to lay a better foundation was not erroneous because "counsel did not object to the court's rulings, or ask for a specific ruling on reputation evidence," nor did defense counsel "clarify her request [or] request the opportunity to make a proffer." Majority op., ¶25.

¶111 Defense counsel did ask for a specific ruling on the reputation evidence, as the transcript clearly shows. Defense counsel obviously disagreed with the circuit court's ruling against her. A bill of exceptions listing objections is not needed in order to preserve an issue for appeal. Wis. Stat. § 805.11 explicitly bars the use of exceptions and bills of exception: "An objection is not necessary after a ruling or

6

order is made. . . . Exceptions shall never be made. . . . Evidentiary objections are governed by [Wis. Stat.] § 901.03."[4]

¶112 The transcript and majority opinion demonstrate that the circuit court erred as a matter of law in not distinguishing between evidence of the victim's reputation and evidence of the victim's prior or other acts.[5] The circuit court simply barred all evidence of the victim's character.

¶113 As the majority opinion properly notes, evidence of the victim's reputation for violence offered to demonstrate the identity of the first aggressor is relevant to a defendant's self-defense claim. Majority op., ¶79. Yet the circuit court erroneously ruled that reputation evidence is categorically not relevant in a self-defense case.

¶114 At the pretrial hearing, the circuit court certainly knew that the defendant was raising a self-defense claim. In fact, the prosecutor reminded the circuit court of the self-

---

[4] Wisconsin Stat. § 901.03 provides in relevant part:

(1) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

. . . .

(b) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

[5] The circuit court similarly erred at the postconviction motion hearing. See majority op., ¶¶36-37.

7

defense claim mere moments before the discussion regarding reputation evidence. In opposing the defendant's pretrial motion, the prosecutor stated, "[McMorris v. State, 58 Wis. 2d 144, 205 N.W.2d 559 (1973)] is very clear that the only time [evidence of prior acts of violence] can be used in a self-defense case is if the defendant knew it . . . ." (emphasis added).

¶115 In a self-defense claim, the identity of the first aggressor is significant. A defendant loses the privilege to assert a claim of self-defense if he or she was the first aggressor. See Wis. Stat. § 939.48(2); Banks v. State, 51 Wis. 2d 145, 186 N.W.2d 250 (1971) (holding that identity of first aggressor was an essential issue that required reversal in the interest of justice); Wayne R. LaFave, 2 Substantive Criminal Law § 10.4(e) (2d ed. 2003) ("It is generally said that one who is the aggressor in an encounter with another——i.e., one who brings about the difficulty with the other——may not avail himself of the defense of self-defense.").

¶116 As the majority opinion additionally notes, "'[p]roperly framed, the reputation testimony can be elicited in less than a minute.'" Majority op., ¶72 (quoting 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 405.2, at 226 (3d ed. 2008)).

¶117 Nevertheless, the circuit court did not give the defendant the minute. When defense counsel asked for clarification of the circuit court's pretrial evidentiary

ruling, the circuit court stated simply that "[the character evidence], in its entirety, is denied."

¶118 When a defendant seeks to introduce evidence regarding a pertinent character trait of the victim, "[w]ide latitude should be granted to defendants in the use of the victim's character" as "circumstantial evidence of conduct." 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 404.5 (3d ed. 2008).

¶119 The circuit court failed to grant the defendant any latitude, let alone "wide latitude," in presenting the victim's reputation for violence as part of the defense.

¶120 Rather than eliciting a full proffer from defense counsel, the circuit court based its evidentiary ruling on an erroneous understanding of law. The circuit court treated specific acts evidence and reputation evidence the same way. The circuit court erroneously denied the defendant's motion to admit evidence of the victim's reputation without allowing the defendant an opportunity to present a foundation for the reputation evidence.

¶121 Defense counsel unambiguously raised the victim's reputation to support the defendant's self-defense claim and was precluded from making a better proffer of "opinion and reputation evidence of [the victim] . . . that [the victim] is a violent person, the witness' opinion that [the victim] is a violent person."

¶122 Defense counsel did all she could do to preserve the issue for appeal. She made a motion to include certain evidence

9

and testimony and then attempted a proffer. She asked for clarification and was rebuffed.

¶123 The circuit court stopped defense counsel from making a better proffer and denied her motion in its entirety. The proffer cannot be viewed as insufficient when the circuit court precluded any proffer. The failure, if any, to lay a foundation lies with the circuit court, not with defense counsel.

B

¶124 In addition to misstating the substance and significance of the pretrial proceedings on the defendant's motion to admit evidence of the victim's reputation, the majority opinion repeatedly errs in stating that the defendant did not raise the issue of first aggressor at trial. Majority op., ¶¶28, 36, 52, 84.

¶125 The issue of who attacked whom first, especially in the present case where the victim was the larger, stronger person,[6] saturates the case as an element of the self-defense claim. The present case provides numerous instances where the defense raised the issue that the victim was the first aggressor at trial, even though the defense did not always use the words "first aggressor." Nothing in the law requires the defendant to use the specific two words "first aggressor" to raise this issue in a self-defense claim.

¶126 The record demonstrates that the issue of who was first aggressor was an essential part of the case for both

---

[6] See majority op., ¶27.

10

parties before, during, and after the presentation of evidence.[7] The issue of the identity of the first aggressor was a consistent component of both parties' cases-in-chief.

¶127 In its opening statement, the defense stated that "[the victim and his friend] were starting an argument and were poised to start something violent with [the defendant] and were basically advancing as [the defendant] was retreating."

¶128 During direct and cross-examination of witnesses, the issue of the identity of the first aggressor was a consistent component of both parties' questioning.

¶129 The State, in its questioning of witnesses, asked about whether the victim or his companion had "take[n] back a hand or a fist and take[n] a swing or slap at [the witness]." In a sidebar with the circuit court regarding a witness's testimony, defense counsel noted that "here, the defense is clearly that the victim was the first aggressor, and my client acted in self-defense. . . . And this jury is making a determination as to who the aggressor was in this particular set of circumstances." During defense counsel's direct examination of a witness, defense counsel and the prosecutor disputed the use of the word "charging" to describe the victim's approach to the defendant.

¶130 In closing argument, the first aggressor argument was central to the defense and was disputed by the prosecution.

---

[7] In contrast, the majority opinion asserts that "[n]either the State nor Jackson specifically argued 'first aggressor' until after all the evidence had been presented at trial." Majority op., ¶28.

11

¶131 Defense counsel's closing argument restated the first aggressor argument:

Two bigger, stronger, younger men came up to the house. They got out of the car. They were aggressive. They were cursing. They were using the F word. [The victim and his companion] were advancing. [The defendants and the other witnesses] were retreating.

At some point [the victim] ran to the car, acted like he was getting something, came charging back. And that's when [the defendant] fired the shot.

¶132 The State disputed this claim in its own closing statement as follows:

Who's escalating the situation out here? You got one exchange of wording and [the defendant] feels that I need to go get my gun, get it out, rack it up and have it at my side. Who is the aggressor? [The defendant] certainly indicates that it was [the victim] and his friend.

But when you look at the facts, what you know, that's not the case. The aggressor is [the defendant] (emphasis added).

¶133 The question of who was the first aggressor was the heart of the self-defense claim and was an issue for both parties throughout every stage of the trial, from the defendant's pretrial motion, to the pretrial hearing on the defendant's motion, to the presentation of evidence at trial, to closing statements, and to the postconviction proceedings.

¶134 The majority opinion mistakenly states that the defendant's "first mention of introducing general 'reputation for violence' evidence to establish first aggressor was in his postconviction motion." Majority op., ¶52. The majority opinion further mistakenly states that "[n]either the State nor

12

Jackson specifically argued 'first aggressor' until after all the evidence had been presented at trial." Majority op., ¶28; see also majority op., ¶84. Based on the record before this court, the majority opinion has erred.

¶135 Although the majority opines that the fault lies with the defendant's failure to lay a foundation for evidence of the victim's reputation and the defendant's failure to rely on the defense that the victim was the first aggressor, I conclude on the basis of the record that defense counsel tried to lay a foundation, but the circuit court precluded defense counsel from doing so. Additionally, I conclude that the record shows that the defendant's self-defense claim rested on the premise that the victim was the first aggressor.

II

¶136 Once again, the court relies on harmless error to deny a criminal defendant relief.[8] A conclusion of harmless error

---

[8] Scholars have noted the tendency of courts to find errors harmless or not based on whether the court believes the defendant is guilty. See, e.g., Harry T. Edwards, To Err Is Human, But Not Always Harmless: When Should Legal Error Be Tolerated?, 70 N.Y.U. L. Rev. 1167, 1187 (1995) ("As matters now stand, in many criminal cases an error is harmless so long as the appellate court remains convinced of the defendant's guilt; an error warrants reversal only where it raises doubts about the defendant's culpability.") (footnote omitted); Keith A. Findley & Michael S. Scott, The Multiple Dimensions of Tunnel Vision in Criminal Cases, 2006 Wis. L. Rev. 291, 349-50 (2006) (footnotes omitted):

Even when appellate courts do find constitutional or procedural errors at trial, they are disinclined to grant relief. Increasingly, the harmless error doctrine enables and encourages appellate courts to overlook trial error when they are satisfied that the defendant was in fact guilty. The harmless error

requires a finding that there exists no "reasonable probability" that the jury could have acquitted. See State v. Armstrong, 223 Wis. 2d 331, 368, 588 N.W.2d 606 (1999). If the reputation evidence were admitted, it may well have been a deciding factor here, particularly because the victim's aggression was at the core of the defendant's self-defense claim.

¶137 The majority opinion asserts that the reputation evidence would be only "modestly probative." Majority op., ¶91 (internal quotation marks omitted). Consequently, it determines that such evidence would be "fleeting and cumulative," majority op., ¶90, and could not have had a "reasonable probability" of changing the jury's verdict, majority op., ¶90 (citing State v. Armstrong, 223 Wis. 2d at 369).

¶138 Yet, the issue of first aggressor was clearly disputed by the parties, with extensive testimony on both sides. This is not a case where the facts or inferences are uncontroverted. Compare State v. Wenger, 225 Wis. 2d 495, 509-510, 593 N.W.2d 467 (1999) (holding that it was harmless error when the circuit court failed to include evidence of a victim's violent character because it would only corroborate extensive uncontroverted evidence); Brandt v. Mason, 256 Wis. 314, 318, 41

---

doctrine has long posed challenges of definition and application for courts. Increasingly, harmless error analysis is applied in a way that turns on an appellate court's assessment of a defendant's guilt, as opposed to whether the error might have had an effect on the verdict. . . . Under this doctrine, cognitive biases can contribute in powerful ways to a conclusion that the defendant was indeed guilty, and that the error was therefore harmless.

14

N.W.2d 272 (1950) (holding that it was harmless error to exclude evidence when the evidence would have simply corroborated an "undisputed" statement).

¶139 In contrast, this case was messy, with conflicting facts and inferences. Additional evidence of the victim's violent character might have made a difference in the outcome. Because the identity of the first aggressor goes to the substance of the defendant's self-defense claim and is not a collateral issue, even modestly probative evidence can have an impact on a jury's decision-making.

¶140 As the court noted in State v. Head, 2002 WI 99, 255 Wis. 2d 194, 648 N.W.2d 413, the exclusion of substantial evidence regarding a self-defense claim "went beyond harmless error to impair fundamentally the defendant's ability to present a defense." Head, 255 Wis. 2d 194, ¶138.

¶141 Our case law has long recognized that the erroneous exclusion of evidence that directly implicates a self-defense claim is not harmless. See State v. Nett, 50 Wis. 524, 7 N.W. 344 (1880) (holding that reversal was required when the circuit court erred in excluding evidence of the victim's reputation where a defendant raised self-defense); Banks v. State, 51 Wis. 2d 145, 186 N.W.2d 250 (1971) (holding that reversal was required when the circuit court erred in excluding evidence that the defendant may have been the first aggressor, which would eliminate the privilege of self-defense); McMorris v. State, 58 Wis. 2d 144, 205 N.W.2d 559 (holding that reversal was required when the circuit court erred in excluding prior

15

acts evidence for a self-defense claim); State v. Boykins, 119 Wis. 2d 272, 279-80, 350 N.W.2d 710 (Ct. App. 1984) (holding that reversal was required when the circuit court erred in excluding evidence of the victim's violent character when the "jury was denied the opportunity to evaluate [defendant's] asserted defense in light of all relevant evidence").

¶142 I see no reason to deviate from these cases in the instant case.

¶143 The court cannot read the jury's mind and has no way of knowing what effect the excluded reputation testimony would have had on the jury. We do know, contrary to the majority opinion at ¶79, that there was a genuine dispute about whether the victim was the first aggressor and the degree to which his aggression might have led to the defendant's fear for his own safety. We do know that the jury found the defendant guilty of the lowest possible included offense, second-degree reckless homicide.

¶144 On the basis of the facts we do know, I conclude that there was a reasonable probability that the jury could have been convinced by additional evidence that the victim was the first aggressor.

¶145 For the foregoing reasons, I dissent.

16