ANNETTE KINGSLAND ZIEGLER, J.
¶ 62. (concurring). Although I join the majority opinion, I depart from the majority analysis because I would not assume without deciding that the circuit court erred by excluding the State's proffered evidence of two Illinois convictions. Instead, I would conclude that the circuit court did not err because it did not erroneously *402 exercise its discretion.[1] A circuit court's decision to admit or exclude evidence is " 'entitled to great deference.' " State v. Jackson, 2014 WI 4, ¶ 45, 352 Wis. 2d 249, 841 N.W.2d 791 (quoting State v. Head, 2002 WI 99, ¶ 43, 255 Wis. 2d 194, 648 N.W.2d 413). " 'This court will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion.'" Id., ¶ 43 (quoting Weborg v. Jenny, 2012 WI 67, ¶ 41, 341 Wis. 2d 668, 816 N.W.2d 191).
¶ 63. At the plea hearing, the circuit court denied the State's request to submit additional evidence of Illinois convictions at a later hearing, deeming this request "too late." The State made that request seven days after the circuit court held that the State's original evidence was insufficient, six weeks after Chamblis filed a motion challenging the State's evidence, and six months after the State learned that Chamblis was going to challenge its evidence. Ultimately, the circuit court reasoned that "this case has *403 been set for trial a long time," the State "had plenty of time" to prove the number of Chamblis's prior convictions, and the court did not wish to delay the case any longer. Under the facts of this case, the circuit court's decision to exclude the proffered evidence was well within its discretion. A contrary conclusion not only raises concern regarding fairness and the ability of a defendant to knowingly, intelligently, and voluntarily plead but also, it neuters the court's ability to control the docket and calendar. In the case at issue the court correctly determined that the time had come for the parties to know the scope of the charges and the potential penalties. While a court is endowed with the ability to allow amendment of charges under appropriate circumstances, a circuit court should likewise have the discretion to say enough is enough, as the court did here.
I. PROCEDURAL HISTORY
¶ 64. A discussion of the procedural history of this case demonstrates why the circuit court appropriately exercised its discretion when it excluded the State's after-the-fact, "last second," proffer of evidence. On November 22, 2011, Chamblis was arrested, he appeared at a bond hearing, and $5,000 cash bail was set. Unable to post bail, he remained in custody throughout this case. Eight days later, on November 30, the State filed a complaint and Chamblis made his initial appearance. The complaint charged Chamblis with operating while intoxicated ("OWI") (fifth or sixth offense) and operating with a prohibited alcohol concentration ("PAC") (fifth or sixth offense). The complaint alleged that he had five prior drunk driving convictions from Minnesota. On December 7, 2011, a preliminary examination was held and Chamblis was *404 bound over for trial. At the end of the preliminary hearing, the State filed an information and Chamblis pled not guilty. The information contained the same charges as the complaint. Two days later, on December 9, Chamblis filed a demand for a speedy trial.[2]
¶ 65. On December 12, 2011, the court scheduled jury selection for February 27, 2012. Sometime in mid-to late-December, the court scheduled a jury trial for March 2, 2012.[3] On December 27 the State sent an e-mail to the circuit court, requesting that the trial date be moved ahead one day to March 1. The State made this request because its analyst witness was unavailable to testify on March 2. On January 4, 2012, the court granted the State's request and rescheduled the jury trial for March 1.
¶ 66. On January 12, 2012, the State filed an amended information, which charged Chamblis with OWI (seventh, eighth, or ninth offense) and operating with a PAC (seventh, eighth, or ninth offense). The amended information alleged the same five prior convictions from Minnesota that were alleged in the complaint and original information and an additional two prior convictions from Illinois.
¶ 67. On January 23, 2012, the circuit court moved the trial date to March 8, 2012, because the State's analyst witness was unavailable on the date for which the trial had been scheduled.
*405 ¶ 68. On January 30, 2012, Chamblis's attorney withdrew from representation. On February 9 the State Public Defender's Office assigned replacement counsel. On February 14 the circuit court entered an order appointing the new counsel.
¶ 69. Sometime shortly after being appointed, Chamblis's new attorney informed the State that Chamblis intended to challenge the alleged Illinois convictions.[4]
¶ 70. On February 15, 2012, the circuit court held a hearing that was scheduled to be a final pretrial hearing. Chamblis's new attorney did not appear because he was unaware of this hearing, as he was appointed counsel the previous day. In a letter to the court dated February 15, Chamblis's attorney stated that he has "not had a chance to review the file, let alone decide whether to proceed to trial." He requested that the court remove the case from the trial calendar and schedule the case for a status conference. On February 17 the court granted that request.
¶ 71. At a March 20 status conference, the circuit court rescheduled jury selection for June 11, and the jury trial for June 15, 2012.
¶ 72. On May 25, 2012, the circuit court held another final pre-trial hearing. Chamblis's attorney informed the circuit court that he had another trial *406 scheduled for the same day as the trial in this case. Accordingly, the court rescheduled jury selection for September 24 and a jury trial for September 26, 2012.
¶ 73. On August 6, 2012, Chamblis filed a motion challenging the Illinois convictions alleged in the amended information. The State's deadline for filing a brief in response to the motion was August 22. However, the State did not file a brief until September 5, two weeks late.
¶ 74. Two weeks before trial, on Wednesday, September 12, 2012, the circuit court held a hearing on Chamblis's motion challenging the alleged Illinois convictions. The court determined that the State's evidence did not prove that Chamblis was convicted in Illinois of a drunk driving-related offense. The court stated that "if. . . more evidence is supplied, . . . we will review it at that point in time . . . ."
¶ 75. Two days later, on September 14, the circuit court held a final pre-trial hearing. This hearing was very brief, and no one mentioned the status of the alleged Illinois convictions. Chamblis's attorney informed the court that Chamblis would like to plead guilty. He further informed the court that a sentencing hearing should be held on a later date than the plea hearing because the State would be requesting a presentence investigation.
¶ 76. On Wednesday, September 19, 2012, the circuit court held a plea hearing. Chamblis's attorney stated that, pursuant to a plea agreement, Chamblis would plead guilty to operating with a PAC as a fourth offense or greater. At that time, the pending charges were still those alleged in the January 2012 amended information, namely OWI (seventh, eighth, or ninth offense) and operating with a PAC (seventh, eighth, or ninth offense). The State explained that it wished to *407 make an offer of proof regarding the alleged Illinois convictions at the sentencing hearing, which would be held at a later date. An Illinois conviction would have made Chamblis's PAC offense in the present case a seventh, rather than sixth, offense.
¶ 77. The mandatory minimum and maximum penalties for Chamblis's offense varied greatly depending on whether it was a sixth or seventh offense. A person who is convicted of a fifth or sixth OWI or PAC offense "shall be fined not less than $600 and imprisoned for not less than 6 months." Wis. Stat. § 346.65(2)(am)5. The maximum penalty for that offense is "a fine not to exceed $10,000 or imprisonment not to exceed 6 years, or both." Wis. Stat. § 939.50(3)(h); see also § 346.65(2)(am)5. By contrast, a person who is convicted of a seventh, eighth, or ninth OWI or PAC offense "shall [receive] a bifurcated sentence . . . and the confinement portion of the bifurcated sentence . . . shall be not less than 3 years." Wis. Stat. § 346.65(2)(am)6. (2013-14); see also State v. Williams, 2014 WI 64, ¶ 47, 355 Wis. 2d 581, 852 N.W.2d 467. The maximum penalty for that offense is "a fine not to exceed $25,000 or imprisonment not to exceed 10 years, or both." § 939.50(3)(g); see also § 346.65(2)(am)6. Thus, if the State proved that Chamblis had an Illinois conviction, his mandatory minimum penalty would increase from six months of imprisonment to three years of confinement. Similarly, his maximum penalty would increase from six years of imprisonment to ten years of imprisonment. Chamblis did not plead to charges that carried the higher penalties.
¶ 78. At the plea hearing, the court stated that it was "not going to consider the new evidence" because that evidence was being offered "way too late." As *408 Chamblis' attorney explained, "I've been complaining about [the sufficiency of the State's evidence of Illinois convictions] for the last, over six months. [The District Attorney's Office and I] have had numerous e-mails going back and forth." The circuit court found Chamblis's attorney credible, stating that "[t]he issue was flagged a long time ago to the Court and I'm sure it was flagged, I trust [Chamblis's counsel] is saying that he told the District Attorney's office about this six months ago." The court explained how "frustrating" it was that the case had not been resolved already. The court noted that "this case has been set for trial a long time." The court explained that the dispute over the alleged Illinois convictions had prevented "this case [from being] resolved in a way that would have made more sense months ago."
¶ 79. The court explained that the State contributed to the delay of this case. According to the court, the State "had plenty of time" to prove the number of Chamblis's prior convictions and "did not take this [matter] seriously enough." The court further noted that the State was two weeks late in filing its response to Chamblis's motion challenging the Illinois convictions.
¶ 80. The court refused to consider the State's proffered evidence in part because doing so would further delay resolution of this case. The court explained that "I don't think I can do a plea without [the number of prior convictions] being determined. It is not a trial with a sentencing at a later date. This is a plea. It's a different type of procedure." The court stated that it "want[ed] the determination of. . . how many prior convictions [there] are before we actually enter into the plea, so Mr. Chamblis knows what he's pleading guilty to." The court expressed concern with *409 further delaying the case for a later plea hearing, stating that "[d]iscovery requires discovery to be done in a timely fashion, [and] to have this done last second like this . . . continues to prolong the process . . . The court also stated that, because Chamblis "sat in jail, days, months, waiting for [the State to determine his number of prior convictions]," it would not be "fair to him" to further delay the case by admitting the State's proffered evidence. The court concluded that it "can't justify extending things more" and that "discovery at some point has to end. . . . The discovery is done."
¶ 81. The court stated that " [i]f we need to put [this case] back on the trial calendar, we can." The court gave the parties 15 to 20 minutes to decide whether to proceed with a guilty plea to operating with a PAC (fifth or sixth offense). The parties then informed the court that they reached a new plea agreement. Pursuant to that agreement, Chamblis pled guilty to operating with a PAC as a sixth offense. As a result, Chamblis faced a mandatory minimum penalty of six months' imprisonment and a maximum penalty of six years' imprisonment.
II. THE CIRCUIT COURT DID NOT ERRONEOUSLY EXERCISE ITS DISCRETION
¶ 82. " 'This court will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion.'" Jackson, 352 Wis. 2d 249, ¶ 43 (quoting Weborg, 341 Wis. 2d 668, ¶ 41). " 'A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record.'" Id. (quoting Weborg, 341 Wis. 2d 668, f 41). " '[T]he circuit court's decisions to *410 admit or exclude evidence are entitled to great deference Id., ¶ 45 (quoting Head, 255 Wis. 2d 194, ¶ 43).
¶ 83. In the present case, the circuit court's concerns with fairness to the defendant and controlling the calendar by not prolonging the case any further were reasonable.[5] Chamblis had initially requested a speedy trial. A jury trial was first scheduled for March 2, which was approximately three months after Chamblis was bound over for trial. The trial date was delayed three months to June 15 and then delayed another three months to September 26. Similarly, a final pre-trial hearing had been scheduled for February, was moved to May, and was then moved to September. The plea hearing was held approximately ten months after the State filed its complaint against Chamblis, and he remained in custody that entire time awaiting trial. The State learned more than six months before the plea hearing that Chamblis believed that its evidence failed to prove that he had Illinois convictions for drunk driving. Nevertheless, the State did not obtain additional evidence of Illinois convictions until September 14, which was five days before the plea hearing. Further, the State was not prepared to present that additional evidence at the plea hearing, but instead wished to offer it at the sentencing hearing at a later date.[6]
¶ 84. As noted earlier, Chamblis had initially requested a speedy trial. At the time of that request there was no indication that the State wished to amend the charges. Had the case been tried, it appears that the charges would have remained the charges to *411 which he ultimately pled. This is not to say that the State's hands were tied, but under the facts of this case the circuit court was not incorrect to conclude that the State was barred from essentially amending the charges and penalties post-plea.
¶ 85. Under these facts, the circuit court did not erroneously exercise its discretion. A circuit court may exclude relevant evidence "if its probative value is substantially outweighed ... by considerations of undue delay . . . ." Wis. Stat. § 904.03.[7] See also Wis. Stat. § 802.10(3)(d), (5)(d) (stating that a circuit court may control its calendar and speedily dispose of actions by setting a time limit for discovery and ruling on the admissibility of evidence pre-trial). Further, "[c]ircuit courts possess inherent discretionary authority to control their dockets with economy of time and effort." State ex rel. Collins v. Am. Family Mut. Ins. Co., 153 Wis. 2d 477, 483, 451 N.W.2d 429 (1990) (citing Rupert v. Home Mut. Ins. Co., 138 Wis. 2d 1, 7, 405 N.W.2d 661 (Ct. App. 1987)). See also Hefty v. Strickhouser, 2008 WI 96, ¶ 31, 312 Wis. 2d 530, 752 N.W.2d 820 ("Wisconsin circuit courts have discretion to control their dockets. This power is inherent to their function."); Schopper v. Gehring, 210 Wis. 2d 208, 215, 565 N.W.2d 187 (Ct. App. 1997) (citation omitted) ("The trial court has the inherent power to control its calendar and scheduling."). A circuit court's power to control its calendar "is essential to the [circuit] courts' ability to function because it provides the courts with the authority to control their judicial business." Lentz v. Young, 195 Wis. 2d 457, 465-66, 536 N.W.2d 451 (Ct. *412 App. 1995) (citing Neylan v. Vorwald, 124 Wis. 2d 85, 94, 368 N.W.2d 648 (1985)).
¶ 86. Accordingly, the "courts cannot allow litigants to control judicial calendars." Sherman v. Heiser, 85 Wis. 2d 246, 254, 270 N.W.2d 397 (1978). See also State v. Anthony, 2015 WI 20, ¶ 76, 361 Wis. 2d 116, 860 N.W.2d 10 (" 'The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony.' " (quoting Taylor v. Illinois, 484 U.S. 400, 410-411 (1988))). If we were to conclude that under these facts the circuit court erroneously denied the State's request to introduce evidence at a later date, we would impermissibly allow the parties to control the circuit court's calendar and at the same time endorse the idea that a defendant need not know the charges to which he pleads or their penalties.
¶ 87. Chamblis pled guilty to a charge that had different penalties than the charge in the amended information that included the unproven prior offenses. Knowing the potential penalties is fundamental to entering a knowing, intelligent, and voluntary plea. See State v. Byrge, 2000 WI 101, ¶ 57, 237 Wis. 2d 197, 614 N.W.2d 477 (citation omitted) ("When a defendant is not aware of the potential punishment, the plea is not entered knowingly, voluntarily, and intelligently . . . ."). This case is not one where the circuit court denied the State's attempt to amend charges to conform to the evidence or to timely amend charges so that a defendant can be on notice. Rather, this case is one where the State wished to essentially amend the charges, after a guilty plea, and have the defendant be exposed to greater penalties and mandatory minimums than those that were associated with the charge to which he pled guilty. The court did not erroneously *413 exercise its discretion by denying the State's request. The defendant did not plead to the charges that relied upon the Illinois prior offenses and thus, carried higher mandatory minimums and greater exposure. Chamblis pled guilty to the original charge because the court determined that the State had not proven the Illinois prior convictions. The court accepted Chamblis's plea for one offense with one set of penalties. It would invoke fundamental principles of fairness to allow that plea to morph into an amended conviction for an offense to which he did not plead.
¶ 88. In sum, although I join the majority opinion, I would explicitly conclude that the circuit court did not erroneously exercise its discretion when it excluded the evidence that the State attempted to submit "too late."
¶ 89. For the foregoing reasons, I respectfully concur.

 It is unclear why the majority opinion does not explicitly hold that the circuit court did not erroneously exercise its discretion. The court of appeals in the present case held "that the circuit court erroneously exercised its discretion when, at the September 19 plea hearing, it excluded the additional evidence of the purported Illinois conviction as 'too late.'" State v. Chamblis, No. 2012AP2782-CR, unpublished order, ¶ 21 (Wis. Ct. App. May 29, 2014). The court of appeals reasoned that the circuit court erred because, under State v. Wideman, 206 Wis. 2d 91, 556 N.W.2d 737 (1996), and State v. McAllister, 107 Wis. 2d 532, 319 N.W.2d 865 (1982), the State was not required to prove the number of Chamblis's prior convictions until the sentencing hearing. Id. The majority opinion rejects that view of Wideman and. McAllister. Majority op., ¶¶ 31-33. Thus, the majority opinion seems to implicitly conclude that the circuit court did not err.

 Chamblis withdrew this demand on May 25, 2012.

 The record does not indicate precisely when the court scheduled the trial for March 2, 2012. The only reference that the record makes to a trial date of March 2 is an e-mail from the State to the circuit court, dated December 27, 2011, in which the State requested moving the trial date from March 2 to March 1.

 As Chamblis's new attorney explained several months later at the plea hearing on September 19, 2012, "I've been complaining about [the sufficiency of the State's evidence of Illinois convictions] for the last, over six months. [The District Attorney's Office and I] have had numerous e-mails going back and forth." The circuit court found Chamblis's attorney credible, stating that "[t]he issue was flagged a long time ago to the Court and I'm sure it was flagged, I trust [Chamblis's counsel] is saying that he told the District Attorney's office about this six months ago."

 The majority opinion implicitly recognizes that the circuit court did not make a mistake of law. See supra note 1.

 The sentencing hearing was held on November 5, 2012.

 The circuit court's explicit concerns with undue delay "tacitly invoked" Wis. Stat. § 904.03. See State v. Smith, 2002 WI App 118, ¶ 16, 254 Wis. 2d 654, 648 N.W.2d 15.