Submitted March 22, reversed and remanded August 22, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTOPHER LYNN FIVECOATS,
*Defendant-Appellant.*

Multnomah County Circuit Court
090632530; A144729

284 P3d 1225

Peter Gartlan, Chief Defender, and Susan Fair Drake, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant appeals from a judgment of conviction for first-degree theft, felon in possession of a firearm, and unlawful entry into a motor vehicle. The primary issue at trial was the identity of a man shown on a surveillance video taking a gun from the victim's vehicle. Defendant wanted to demonstrate to the jury his supposedly peculiar gait so that they could compare it to the gait of the man in the video. The court ruled that defendant could either exercise his right not to testify or demonstrate his walk to the jury, but he could not do both; demonstrating his walk would be testimonial, and doing so would waive his right not to testify. The state responds that the court did not err and that, if it did, the error was harmless. We conclude that the court erred, and we cannot say that the error had little likelihood of affecting the verdict. We therefore reverse and remand.

Because defendant was convicted by a jury, we summarize the facts in the light most favorable to the state. *State v. Vidal*, 245 Or App 511, 513, 263 P3d 364 (2011), *rev den*, 351 Or 761 (2012). The victim was making a delivery to a bar in Portland, and he had with him a pistol-gripped shotgun stored in a compartment inside the driver's side door of his van. He parked behind the bar, and, when he opened the door to get out of the van, the gun was visible to a group of men in a nearby smoking area. The victim later told police that he saw the men and that one of them was a white male leaning against a fence, facing the driver's side of the van. He described the man as wearing a red sweater, about 37 years old, about five feet, 11 inches tall, and weighing about 165 pounds. When the victim went inside the bar to make a delivery, he locked the van but left the driver's side window down. When he returned some 15 minutes later, the gun and a towel that had been on the driver's seat were missing. The victim reported the theft to the Portland police.

The next day, the victim reported to Officer Berge that an unidentified woman had tipped him that defendant had stolen the gun. The victim had never met or seen defendant before. Berge showed the victim a photo array of six pictures, and the victim identified defendant as the

man that had been leaning against the fence facing his van immediately before the theft. The same day, Berge obtained a surveillance video of the area behind the bar. The black and white video showed a man walk up to the driver's side of the van, quickly reach inside the window, take the shotgun and towel, and walk away. Berge could tell from watching the video, based on the man's behavior and the short timeframe, that the man who took the gun knew that the gun was in the van. Berge then separately showed the video to Officers Braun and Sharpe, who were familiar with many of the people who frequented the area around the bar. Braun and Sharpe both identified defendant as the man in the video based on his appearance and mannerisms, particularly his "twitchy walk" and jerky movements. Defendant was arrested and charged with felon in possession of a firearm, ORS 166.270, theft in the first degree, ORS 164.055, and unlawful entry into a motor vehicle, ORS 164.272.

At trial, defendant requested that he be allowed to demonstrate his walk so that the jury could compare his gait to the gait of the man in the surveillance video. The following colloquy ensued:

"THE COURT: Well, first of all, are you trying to prove a gait? Are you trying to show that he has some type of physical—

"[DEFENDANT'S COUNSEL]: Yes, Your Honor.

"THE COURT: —something that prevents him from walking? Because that would affect how far he needs to walk. Instead of telling the Court you want your client to walk, you would need to give more information.

"[DEFENDANT'S COUNSEL]: Your Honor, I believe that if he walked from, say, here to the bench and back, that would be sufficient to show he's had a broken back. He has—his gait is not a regular gait. And I believe that it is important for them to see how he walks as compared to the person that's on the video."

The court initially agreed that defendant could walk from counsel table to the bench and back. However, when it came to the court's attention that defendant was invoking his right against self-incrimination under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the

United States Constitution by not testifying, the court ruled that, if defendant did so, he could not walk because the walk would be testimony. The court stated that defendant could not "get[ ] up and * * * walk[ ] in front of the jury if he's not going to take the stand. Now, if he's going to take the stand, then he can walk. But you can't have it both ways."

The state played the surveillance video for the jury, and Officers Braun and Sharpe testified about their independent identifications of defendant as the man in the video. Braun testified that she had known defendant, whom she described as a distinctive looking person, for five or six years and that she recognized his mannerisms and "twitchy walk," which she described as "not a normal gait." Sharpe testified that he, too, had known defendant for five years, and he described defendant as having a distinctive face and jerky movements. Defendant's only witness, Tyrell, testified that she had known defendant his entire life and that defendant had suffered a neck injury that affected his ability to move, making him walk with a pronounced gait, "like one leg's shorter than the other." When asked by the state if defendant had "jerky movements" in addition to a limp, she agreed. The jury ultimately convicted defendant of all counts. Defendant now appeals.

Initially, the state argues that defendant did not preserve his claim of error because he did not make an offer of proof because he did not demonstrate his walk to the court so that the court could determine whether to allow him to demonstrate it to the jury. We disagree. "[T]he substance of the evidence * * * was apparent from the context," OEC 103(1)(b), when defendant made his request: He intended to demonstrate that his walk, although not a normal gait, was different from the gait of the man in the surveillance video. Whether his walk did or did not resemble the one in the video would be a question for the jury, not a judgment for the court in the exercise of its determination of admissibility.

Defendant's main contention on appeal is that he should have been allowed to demonstrate his walk to the jury even though he did not testify, because walking is not testimonial evidence; thus, demonstrating his walk would

not have implicated his state and federal constitutional rights against self-incrimination.[1]

Article I, section 12, of the Oregon Constitution provides, in part: "No person shall be * * * compelled in any criminal prosecution to testify against himself." The right against compelled self-incrimination applies "'to any kind of judicial or nonjudicial procedure in the course of which the state seeks to compel testimony that may be used against the witness in a criminal prosecution.'" *State v. Fish*, 321 Or 48, 53, 893 P2d 1023 (1995) (quoting *State v. Langan*, 301 Or 1, 5, 718 P2d 719 (1986)). Thus, to receive protection under the self-incrimination clause of Article I, section 12, a person's statement or conduct must (1) be "testimonial" evidence, (2) be "compelled," and (3) be evidence that could be used against the person in a criminal prosecution. *Fish*, 321 Or at 53.

Here, the state did not seek to compel defendant to walk for the jury; rather, defendant wanted the court to admit the evidence in question. Thus, our inquiry is not whether defendant's right against compelled self-incrimination by the state applies. Instead, we must determine whether the evidence that defendant sought to introduce was "testimonial," such that defendant, if allowed to walk in front of the jury, would have waived his right against self-incrimination and been subject to cross-examination.

We agree with defendant that demonstrating a walk is not testimonial. For purposes of the right against self-incrimination, "testimonial" evidence is not limited to in-court testimony under oath. *Id.* Rather, the label "testimonial" is simply shorthand for the type of evidence that is subject to the right against compelled self-incrimination. *Id.* Testimonial evidence is evidence that communicates by words or conduct an individual's beliefs, knowledge, or state of mind. *Id.* at 56. In contrast, evidence of physical characteristics such as identity, appearance, and physical conditions are not testimonial. *State v. Tiner*, 340 Or 551,

---

[1] Defendant also assigns error to the trial court's refusal to give a jury instruction requiring a unanimous verdict, arguing that nonunanimous jury verdicts are unconstitutional. We have rejected that argument in the past, *State v. Cobb*, 224 Or App 594, 596-97, 198 P3d 978 (2008), *rev den*, 346 Or 364 (2009), and we do so again.

561-62, 135 P3d 305 (2006), *cert den*, 549 US 1169 (2007) (exposure of the defendant's tattoos to be photographed did not raise an issue of self-incrimination); *State v. Fisher*, 242 Or 419, 410 P2d 216 (1966) (a defendant's handwriting was not testimonial); *State v. Carcerano*, 238 Or 208, 215, 390 P2d 923 (1964), *cert den*, 380 US 923 (1965) (court requiring the defendant to arise was not testimonial compulsion); *see also State v. Cram*, 176 Or 577, 160 P2d 283 (1945) (the defendant's blood sample and the admission of its alcoholic content was not testimonial); *State v. Nielsen*, 147 Or App 294, 307-08, 936 P2d 374, *rev den*, 326 Or 68 (1997) (walk-and-turn and one-leg-stand field sobriety tests were not testimonial); *Kessler v. Cupp*, 11 Or App 392, 502 P2d 281 (1972) (requiring defendant to wear a stocking mask at trial did not violate his due process rights). Because walking is physical evidence concerning a person's appearance or physical condition and does not communicate beliefs, knowledge, or state of mind, we conclude that it is not testimonial.[2] Thus, it was error for the trial court to rule that demonstrating his walk would have been testimonial so as to waive his right against self-incrimination.

However, evidentiary error does not require reversal unless it is prejudicial. OEC 103(1). Indeed, under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm a conviction despite evidentiary error if there is "little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003[.] In making that determination, we consider the possible influence of the error on the verdict that the jury rendered. *Id.* Defendant argues that the error was not harmless and that the jury was entitled to see defendant's movements and make its own determination as to the identity of the man in the video, particularly because the short duration and quality of the video made any identification difficult. Further, defendant argues that the victim's identification of defendant does not render the trial court's error harmless because the victim's statement that the man he saw was

---

[2] We do not mean to imply that a person's walk can never indicate beliefs, knowledge, or state of mind; we can envision circumstances in which a rapid walk might indicate, for example, a desire to get away from an unpleasant or dangerous situation or arrive at a pleasurable one. This case does not implicate such circumstances.

wearing a red sweater was not corroborated by the video; the man in the video was wearing a short-sleeved shirt. The state, on the other hand, contends that "[a] reasonable juror would not be persuaded to disregard the other strong evidence of defendant's identity, based on a brief walking demonstration by defendant."

We agree with defendant. Although the evidence against him was substantial and the probative value of any demonstration of a walk would be negligible, it is not our prerogative on review for harmlessness to weigh the evidence. *Id.* It is conceivable that defendant's walk was so distinctive and so distinctively different from the walk on the brief video that a juror could be persuaded that defendant was not that man.

Reversed and remanded.